UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHAD GREGORIUS, on behalf of
himself and all others
similarly situated,

    Plaintiff,

v.                                Case No: 2:16-cv-593-FtM-99MRM

NPC INTERNATIONAL, INC., a
foreign profit corporation,

    Defendant.

### OPINION AND ORDER

This matter comes before the Court on defendant's Motion to Dismiss or, Alternatively, Compel Individual Arbitration Stay Proceedings (Doc. #14) filed on September 26, 2016. Plaintiff filed a response (Doc. #18) on October 10, 2016, and defendant filed a reply (Doc. #21) on October 17, 2016. For the reasons set forth below, the proceedings are stayed and individual arbitration compelled.

**I.**

Chad Gregorius (plaintiff or Gregorius) initiated this action on July 29, 2016 by filing a three-count Complaint (Doc. #1) on behalf of himself and other similarly-situated individuals against his former employer, NPC International, Inc.[1] (defendant or NPC).

---

[1] NPC operates several Pizza Hut restaurant franchises in Florida.

Plaintiff claims that he (and others) were denied overtime and minimum wage pay, in violation of the Fair Labor Standards Act (FLSA). Plaintiff also alleges violation of FLSA's tip-credit provision, 29 U.S.C. § 201(m). Defendant seeks to enforce an arbitration agreement and dismiss the Complaint, or to stay the case and compel arbitration.

What follows is a brief summary of the undisputed facts: plaintiff worked for defendant[2] from on or about June 7, 2015 to May 19, 2016[3]. On October 1, 2014, NPC implemented an Agreement to Arbitrate (Agreement) for all Pizza Hut employees hired after that date for electronic view and sign-off. (Docs. # 14-2, ¶7; 14-3.) The Agreement was available for signature by new-hire employees through a system known as SAP, via the company web portal. See Declaration of Rachel Berry (Doc. #14-2, ¶¶3-4.) To electronically sign a document in SAP, an employee must: (i) login to his or her SAP file using an individual sign-on access; (ii) open the "My Documents" tab; (iii) click on the individual document to be viewed, which opens the document in the full screen for

---

[2]Defendant's motion states that plaintiff worked at a Pizza Hut store in Lee County, Alabama. (Doc. #14-1, p. 2.) The Court believes this is a scrivener's error, and defendant means Lee County, Florida.

[3] Plaintiff's Complaint states that he was employed by defendant from May 20, 2015 until April 20, 2016. (Doc. #1, ¶17.) Yet the Declaration of Rachel Berry, Human Resources Director for NPC, states that plaintiff was employed by NPC from June 7, 2015 until May 19, 2016. (Doc. #14-2, ¶8.)

review; (iv) after review, close the document; and (v) click on the "Acknowledged Document" box, which appears to the right of the document title. (Id. at ¶5.) Once an employee signs a document in SAP, the name of the document automatically populates in the "Acknowledged Documents" section of SAP, along with the date the employee signed it. (Id. at ¶6.) Rachel Berry, Director of Human Resources for NPC, states that based upon her review of the company records, plaintiff viewed and signed the Agreement on July 7, 2015, a copy of which is attached as an exhibit to her Declaration. (Id. at ¶10; Doc. #14-3.) To show this, plaintiff has included a screenshot of plaintiff's "Acknowledged Documents" in SAP, which lists the Agreement. (Doc. #14-4.)

The Agreement outlines in detail the process for resolving disputes between NPC and its employees, and provides in relevant part as follows:

> NPC International Inc. on behalf of itself and its parents and affiliates, officers and directors (collectively, "NPC") and I agree to use confidential binding arbitration, instead of going to court, for any claims, including any claims now in existence or that may exist in the future (a) that I may have against NPC and/or their current or former employees or (b) that NPC may have against me. Without limitation, such claims include any concerning wages, expense reimbursement, compensation . . . .
> . . .
>
> In any arbitration, the American Arbitration Association ("AAA") will administer the arbitration, and the then prevailing employment dispute resolution rules of the AAA will govern, except that . . . as discussed below, the arbitration shall occur only as an individual action

> and not as a class, collective, representative, or consolidated action.
> . . .

(Doc. #14-3.)

Plaintiff also agreed that he may bring claims only individually, not as a class, and that he was giving up his rights to participate in a class or other representative action as follows:

> NPC and I agree that any and all claims subject to arbitration under this Agreement to Arbitrate may be instituted and arbitrated only in an individual capacity, and not on behalf of or as a part of any purported class, collective, representative, or consolidated action (collectively referred to in this Agreement to Arbitrate as a "Class Action"). Furthermore, NPC and I agree that neither party can initiate a Class Action in court or in arbitration in order to pursue any claims that are subject to arbitration under this Agreement to Arbitrate. Moreover, neither party can join a Class Action or participate as a member of a Class Action instituted by someone else in court or in arbitration in order to pursue any claims that are subject to arbitration under this Agreement to Arbitrate. It is the parties' intent to the fullest extent permitted by law to waive any and all rights to the application of Class Action procedures or remedies with respect to all claims subject to this Agreement to Arbitrate. It is expressly agreed between NPC and me that any arbitrator adjudicating claims under this Agreement to Arbitrate shall have no power or authority to adjudicate Class Action claims and proceedings. The waiver of Class Action claims and proceedings is an essential and material term of this Agreement to Arbitrate, and NPC and I agree that if it is determined by a court of competent jurisdiction that it is prohibited or invalid under applicable law, then this entire Agreement to Arbitrate is unenforceable. Otherwise, if any other provision of this Agreement to Arbitrate is held to be unenforceable by a court of competent jurisdiction, such provision shall be deemed voided, however, all remaining provisions of this

> Agreement to Arbitrate shall remain in full force and effect.
>
> All issues are for the arbitrator to decide, except that issues relating to arbitrability, the scope or enforceability of this Agreement to Arbitrate, or the validity, enforceability, and interpretation of its prohibitions of class and representative proceedings, shall be for a court of competent jurisdiction to decide.
>
> I acknowledge and agree that this Agreement to Arbitrate is made in exchange for my employment or continued employment, as well as the mutual promises to resolve disputes through arbitration contained in this Agreement. . . .

(Doc. #14-3.)

In response, plaintiff does not dispute the substance of the Agreement, defects in its formation, or its validity. Instead, plaintiff asserts that because defendant failed to produce a signed arbitration agreement, defendant has failed to meet its burden to prove that an enforceable arbitration agreement exists between the parties. (Doc. #18, p. 1.)

**II.**

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, applies to arbitration agreements involving interstate commerce. See 9 U.S.C. § 2; Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 113 (2001) (finding that the FAA's coverage provision includes employment contracts). According to the FAA, any "written [arbitration] provision in ... a contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

for the revocation of any contract." 9 U.S.C. § 2. "Accordingly, the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the claims before the court fall within the scope of that agreement." Lambert v. Austin Ind., 544 F.3d 1192, 1195 (11th Cir. 2008). A court may only order parties to arbitration when it is "satisfied that the making of the agreement for arbitration ... is not in issue." 9 U.S.C. § 4. "The principal purpose of the [Federal Arbitration Act (FAA)] is to ensure private arbitration agreements are enforced according to their terms." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011).

In Bazemore v. Jefferson Capital Sys., LLC, 827 F.3d 1325, 1329 (11th Cir. 2016), the court held that whether an enforceable contract or agreement to arbitrate exists must be examined using a summary-judgment like standard and "a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." 827 F.3d at 1333 (quoting Fed. R. Civ. P. 56(a)). "This court has consistently held that conclusory allegations without specific supporting facts have no probative value" for a party resisting

summary judgment. Id. (citing Leigh v. Warner Bros., 212 F.3d 1210, 1217 (11th Cir. 2000) (quotation marks omitted)).

To determine whether an enforceable agreement to arbitrate exists, the Court notes that the Agreement was executed and plaintiff's claims arose in Florida. Under Florida law, a contract requires offer, acceptance, consideration, and sufficient specification of essential terms. Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009) (applying Florida law). "In Florida, '[a] party has a duty to learn and know the contents of a proposed contract before he signs and delivers it and is presumed to know and understand its contents, terms and conditions.'" Williams v. Eddie Acardi Motor Co., 3:07-cv-782-J- 32JRK, 2008 WL 686222, at *4 (M.D. Fla. Mar. 10, 2008). An electronic signature may be used to sign a writing and has the same force and effect as a written signature. See Fla. Stat. § 668.50.

Here, the competent evidence offered by NPC is sufficient to establish the existence of an arbitration agreement entered into between it and Gregorius, including evidence that plaintiff at least electronically opened the Agreement and electronically signed it. Plaintiff has provided no evidentiary support that would show that he did not enter into an arbitration agreement with NPC. Just as in Bazemore, plaintiff "has not, for example, submitted an affidavit swearing under oath that []he never received" the arbitration agreement. 827 F.3d at 1329.

Plaintiff's only argument – that defendant must produce a signed arbitration agreement – does not raise a fact issue as to the existence of a valid agreement. See Fla. Stat. § 668.50. The case cited by plaintiff in support, Barkley v. Pizza Hut of Am., Inc., 6:14-cv-376-Orl-37DAB, 2014 WL 3908197, at *2 (M.D. Fla. Aug. 11, 2014), does not compel a different result. In Barkley, the employer could not find plaintiff's allegedly signed arbitration agreement, nor did anyone have a recollection that the agreement was signed. Id. at *3. That is not the case here.[4]

The Court further finds that plaintiff's FLSA claims are within the scope of the explicit terms of the Agreement. The contract's language is the best evidence of the parties' intent, and a court should look to the contract's plain meaning when interpreting it. Royal Oak Landing Homeowner's Ass'n, Inc. v. Pelletier, 620 So. 2d 786, 788 (Fla. 4th DCA 1993); Herpich v. Estate of Herpich, 994 So. 2d 1195, 1197 (Fla. 5th DCA 2008).

**III.**

The final issue that defendant asks the Court to decide is whether plaintiff's claims must proceed to arbitration as individual claims only or may proceed to arbitration on behalf of

---

[4] Plaintiff's argument that defendant's motion should be denied because it did not include a certificate of good faith conferral pursuant to Local Rule 3.01(g) is unavailing. Under Local Rule 3.01(g), a party is not required to include such a certificate in a motion to dismiss, and plaintiff has not otherwise shown that he has been prejudiced.

a class.  Under the terms of the contract which are particularly broad, the parties agreed that a judge, not an arbitrator, would decide this issue.  (Doc. #14-3.)  Pursuant to the Agreement, class arbitration is forbidden and the parties agreed to individual arbitration.  Parties may agree to collective action and classwide arbitration waivers in arbitration agreements.  <u>Walthour v. Chipio Windshield Repair, LLC</u>, 745 F.3d 1326, 1334-35 (11th Cir. 2014); <u>Cruz v. Cingular Wireless, LLC</u>, 648 F.3d 1205, 1215-16 (11th Cir. 2011) (citing <u>Concepcion</u>, 563 U.S. 333) (finding that to the extent Florida law would require the availability of classwide arbitration procedures, it would be inconsistent with and preempted by FAA § 2).  Thus, plaintiff's claims will proceed to arbitration as individual claims only and not on behalf of a class.  The matter will be stayed for its duration.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.   Defendant's Motion to Dismiss or, Alternatively, Compel Individual Arbitration Stay Proceedings (Doc. #14) is **GRANTED in part and DENIED in part** to the extent that the proceedings are stayed and individual arbitration is compelled.  The motion is otherwise denied.

2.   The case is hereby **stayed** pending notification by the parties that plaintiff has exhausted arbitration and the stay is due to be lifted or the case is due to be dismissed.

3.  The Clerk shall terminate all deadlines and motions, and administratively close the case.

4.  Defendant's Motion to Stay FLSA Scheduling Order Pending Resolution of Defendant's Motion to Compel Arbitration (Doc. #23) is **DENIED AS MOOT**.

**DONE and ORDERED** at Fort Myers, Florida, this __30th__ day of November, 2016.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record